**UNITED STATES DISTRICT COURT**
**WESTERN DISRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FILED**

July 27, 2022

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY:_____
                                    NM
                                    DEPUTY

| | | |
|---|---|---|
| **JUANITA H. CADENA** | § | |
| | § | |
| **v.** | § | **NO: SA:22-cv-00705-FB** |
| | § | |
| **JOHN DOE AND STATE FARM MUTUAL** | § | |
| **AUTOMOBILE INSURANCE COMPANY** | § | |

---

**PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT**

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW **JUANITA H. CADENA** and files this her First Amended Original Complaint complaining of **JOHN DOE AND STATE FARM MUTUAL AUOTOMOBILE INSURANCE COMPANY** herein after called Defendant John Doe and Defendant STATE FARM and for cause of action would respectfully show unto the Court as follows:

**I.     PARTIES**

1. Plaintiff, JUANTIA H. CADENA is an individual residing in San Antonio, Bexar County, Texas. In accordance with CPRC §30.014, the last three numbers of Plaintiff's driver's license number are 183; and the last three numbers of her Social Security number are 658.

2.  The following Texas citizen and resident, **JOHN DOE**, hereinafter referred to as "Defendant John Doe" is an individual whose name and address are unknown at this time. No service is requested at this time.

3.  Defendant STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY is a domestic insurance company with its principal place of business located in Bexar County, Texas. This Defendant has been served and has generally appeared in this lawsuit.

## II.    JURISDICTION AND VENUE

4.  Venue is proper in Bexar County, Texas, pursuant to Sections 15.002(a)(1) under the general venue rule as all or a substantial part of the events or omissions giving rise to the claim occurred in Bexar County, Texas.

## III.    FACTS

5.  This collision occurred at approximately 1:43 pm on December 9, 2021. Plaintiff was lawfully traveling southbound on the 7000 block of Bandera Road near the intersection of Huebner Road in San Antonio, Bexar County, Texas. Defendant John Doe was driving a white pickup truck and was also operating his vehicle directly behind Plaintiff's vehicle. Prior to the collision, Plaintiff had to bring her vehicle to a complete stop due to a red traffic light at the intersection, when Defendant John Doe, who was clearly not paying attention, not keeping a safe lookout or operating his vehicle in a safe manner, and was following to close, violently rammed his vehicle into the rear of Plaintiff's vehicle. Immediately

following the collision, Defendant John Doe fled the scene without exchanging the necessary information as required by law. Defendant was an uninsured motorist. Since this was a rear-end collision, Plaintiff was unable to take any evasive actions to avoid this collision causing Plaintiff to be violently thrown about the inside of her vehicle causing serious painful physical injuries to Plaintiff. Plaintiff would respectfully show that the collision was proximately caused by the negligence of Defendant John Doe and said negligence was the proximate cause of Plaintiff's injuries and damages.

6. Defendant John Doe clearly failed to control the speed of his vehicle, failed to maintain a safe-lookout or operate his vehicle in a safe manner, and failed to maintain a safe assured distance between his vehicle and the vehicle immediately ahead of him. The liability for the collision and the resulting injuries to Plaintiff are solely that of Defendant John Doe. Due to the seriousness of this collision, the forces at impact and the onset of soreness, stiffness and pain experienced by Plaintiff immediately after the impact, Plaintiff sought out medical attention for her injuries.

7. Defendant John Doe was negligent, grossly negligent and/or reckless in the operation of his vehicle. The collision was proximately caused by the negligence and/or recklessness of Defendant John Doe, and said negligence of the Defendant was the proximate cause of the Plaintiff's injuries and damages as described below.

8.  Since Defendant John Doe fled the scene of the collision, under the terms of the insurance policy purchased from Defendant State Farm, Plaintiff is entitled to the insurance benefits she purchased from Defendant State Farm for Uninsured Motorist Benefits (UM Benefits)

## IV. PLAINTIFF'S CLAIM OF NEGLIGENCE - DEFENDANT JOHN DOE

9.  Defendant John Doe had a duty to exercise the degree of care that a reasonably prudent person would use to avoid harm to others under circumstances similar to those described herein.

10. Plaintiff's injuries were proximately caused by Defendant John Doe's breach of his duties.

11. Defendant John Doe's duties are established by law:

12. *To wit,* Defendant John Doe had a duty under Texas Transportation Code §545.351 (c) (1) has a duty to control the speed of the vehicle as necessary to avoid colliding with another person or vehicle when a special hazard exists with regard to traffic. Defendant John Doe breached this duty and is therefore liable *per se*.

13. Defendant John Doe had a duty to: to keep a safe look-out, to avoid distractions, and to operate his vehicle in a safe and prudent manner. He breached these duties and, as a proximate result, caused serious bodily injuries to the Plaintiff.

14. Each of the foregoing negligent acts of Defendant John Doe were each and all independently and/or concurrently the proximate cause of the collision and the

injuries and damages which the Plaintiff has suffered.

## V.    PLAINTIFF'S DAMAGES – NEGLIGENCE OF UNINSURED DRIVER

28. As a direct and proximate result of the Defendant John Doe's negligence Plaintiff was caused to suffer serious bodily injuries.

29. Because of the nature and severity of the injuries sustained by Plaintiff, she is entitled to monetary compensation for damages in an amount within the jurisdictional limits of this Court, as set out further below, and which the jury deems just and fair, including, but not limited to, the following elements of damages that have been sustained in the past and that, in reasonable probability, will be sustained in the future:

    a.  Reasonable medical care and expenses paid or incurred.  These damages were incurred by the Plaintiff for the necessary care and treatment resulting from the collision complained of herein and such charges are reasonable and were usual and customary charges for such services;

    b.  Reasonable and necessary medical care and expenses that, in reasonable probability, will be incurred in the future;

    c.  Physical pain and mental anguish sustained in the past;

    d.  Physical pain and mental anguish that, in reasonable probability, will be sustained in the future;

    e.  Physical impairment other than the ability to earn money sustained in the past;

    f.  Physical impairment other than the ability to earn money that, in reasonable probability, will be sustained in the future;

    g.  Disfigurement sustained in the past;

    h.  Disfigurement that, in reasonable probability, will be sustained in the future;

i.  Loss of household services sustained in the past;

j.  Loss of household services that, in reasonable probability, will be sustained in the future;

k.  Loss of the capacity to earn sustained in the past;

l.  Loss of the capacity to earn that, in reasonable probability, will be sustained in the future;

m.  Loss of the enjoyment of life sustained in the past;

n.  Loss of the enjoyment of life that, in reasonable probability, will be sustained in the future;

30. For each and all of the above elements of damage, property damages to Plaintiff and all other damages suffered by said Plaintiff as a result of the acts of the Defendants, this suit is brought seeking monetary damages and relief.

31. All of the damages of the Plaintiff are within the jurisdictional limits of this Court, and Plaintiff would ask that a fair, reasonable, and impartial jury assess the amount of damages in this case properly recoverable for the catastrophic loss she has sustained. The amount of actual damages awarded should be subject to the evaluation of the evidence by a fair and impartial jury.

## VI. CLAIMS AGAINST DEFENDANT
## STATE FARM MUTUAL AUTOMOBLE INSURANCE COMPANY

15. The Plaintiff is the beneficiary of an auto insurance policy purchased from Defendant. The policy number is 440-6043-A22-53A. The collision made the basis of this lawsuit occurred while this policy was in force and effect.

## VII.  DECLARATORY JUDGMENT
## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

16. Plaintiff brings this claim against Defendant STATE FARM under FRCP 57 and 29 USC §2201.

17. At the time of the occurrence in question the Plaintiff possessed and was the beneficiary of a policy of Uninsured Motorist Coverage (UM) purchased from Defendant STATE FARM with limits of $100,000.00 per person. As a direct and proximate result of the collision, Plaintiff was caused to suffer injury and damages due to the negligence of an underinsured person. The damages sustained by the Plaintiff exceed the policy limits of UM auto liability insurance purchased by the Plaintiff.  Plaintiff has requested UM policy benefits from Defendant STATE FARM, provided all of her medical expenses incurred to obtain medical treatment, and her medical records and all records and documents requested by Defendant STATE FARM. Defendant STATE FARM has failed/refused to pay the benefits purchased and claimed by the Plaintiff.

18. Plaintiffs bring a Declaratory Judgment action to define the rights and status of the parties, to determine whether the UM contract is valid and enforceable, and to determine the amounts owed by Defendant STATE FARM to the Plaintiff under the UM policy purchased by Plaintiff from Defendant STATE FARM.

## VIII. TEXAS INSURANCE CODE CLAIMS
## DECEPTIVE MARKETING OF THE INSURANCE POLICY

19. STATE FARM alleged in its Verified Original Answer filed in State Court immediately prior to removal of this case to Federal Court that under the terms of the uninsured motorist coverage (UM) insurance policy the Plaintiff purchased from STATE FARM, the Plaintiff is not entitled to recover any benefits from State Farm unless/until she obtains a final judgment establishing "liability and damages".  STATE FARM alleges that this is a "condition precedent" to recover UM benefits.[1]

### IX. VIOLATIONS OF TEXAS INSURANCE CODE 541
### DECEPTIVE MARKETING/SALE OF INSURANCE POLICY

22. Plaintiff brings a Deceptive Trade Practices Act suit against Defendant STATE FARM based on Defendant STATE FARM's use or employment of acts and practices that violate Texas Insurance Code Chapter 541. Tex. Bus. & Com. C. §17.50(a)(4).

23. The violations of Chapter 541 including one or more of the following:

  a. §541.051 (1)(B):  STATE FARM caused to be made, issued or circulated a statement misrepresenting with respect to the standard policy issued to the public and the Plaintiff a misrepresentation with respect to the policy issued the benefits or advantages of the policy.  Specifically, STATE FARM's policy states:

---

[1] The "verification" provided was by the attorney for State Farm with the firm of Ortiz & Batis, P.C.

i.    "If a premium is shown on the Policy Declarations for Uninsured /Underinsured Motorists Coverage, we will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured person, or property damage."

b.    This is misleading and a misrepresentation because STATE FARM has taken the position with respect to the Plaintiff in this case with respect to her claim for UM benefits that the Plaintiff was, in reality, required to get a judgment establishing liability and damages prior to being entitled to any UM benefits at her own cost and expense.

c.    The STATE FARM policy is misleading and a misrepresentation because it fails to state that "legally entitled to recover" is not simply a description of the types of damages for which STATE FARM will pay, but is in actuality a tremendous burden on the insured to try a case to jury verdict against Defendant STATE FARM with all of the costs, expenses and attorney's fees to be paid/owed by the policy holder.  In essence and reality, the UM policy purchased by the Plaintiff is essentially worthless under STATE FARM's verified pleadings in this case.

d.    This is misleading and a misrepresentation because the policy benefits purchased by the Plaintiff for UM benefits will never actually be received by the Plaintiff because, to get any UM payments, STATE FARM requires that

the Plaintiff obtain a judgment at her sole cost and expense without reimbursement. The cost of securing any UM benefits will ALWAYS result in the consumer receiving less than what was purchased and what STATE FARM represented when it sold this insurance policy to the Plaintiff.

24. The above-described conduct is also a violation of §541.061(2) and (3):

a.    STATE FARM has violated Sec. 541.061 (2) by failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statement were made. STATE FARM did not state in the policy terms that it would require the Plaintiff to obtain a judgment before STATE FARM would pay any UM benefits. STATE FARM did not state that the Plaintiff could never actually receive the policy limits/benefits STATE FARM represented were purchased given STATE FARM's refusal to pay absent a judgment. STATE FARM did not state that it would not reimburse the Plaintiff for the costs, expenses, and attorney's fees to secure a judgment.

b.    STATE FARM has violated Sec 541.061(3) by making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. STATE FARM did not adequately or accurately explain *it's condition precedent to recovery* to get UM benefits and what the Plaintiff should expect if she were ever struck by an uninsured

driver.  STATE FARM did not state that "legally entitled to recover" was a a condition precedent nor did it explain that – unlike all of the language used in other portions of the insurance sold to the Plaintiff – that it meant that, if the Plaintiff was ever injured by an uninsured driver, the Plaintiff would be years and thousands of dollars away from receiving any benefits and would have to sue STATE FARM – and get a judgment against STATE FARM – before it would pay any benefits.

25. The above-described conduct violated §541.061 of the Texas Insurance Code because State Farm misrepresented the insurance policy sold to the Plaintiff. STATE FARM stated that it would provide coverage to the Plaintiff if she were struck by an uninsured driver.  STATE FARM stated that, if the Plaintiff were struck and injured by an uninsured driver, she would be entitled to UM benefits up to and including the policy limits of $100,000.00.  These statements were untrue. (§541.061 (1)).   STATE FARM failed to state a material fact (i.e. – to be entitled to any UM benefits you will need to hire an attorney, pay all of the fees and expenses, litigate against STATE FARM in Federal Court who possesses billions of dollars and numerous attorneys to defend the case, and then, months later, if you get a final judgment, STATE FARM will pay UM benefits) necessary to make other statements made not misleading, considering the circumstances under which the statements were made. (§541.061(2)). STATE FARM made these statements in a

manner that would mislead a reasonably prudent person to a false conclusion of a material fact. (§541.061(3)).

26. The harm/damages caused to Plaintiff are obvious as the UM policy, if it required the Plaintiff to secure a judgment with the required attorney's fees, costs expenses and delays required to be borne by her, makes the policy essentially worthless. Plaintiff would not have purchased STATE FARM's UM insurance policy if STATE FARM had complied with the Texas Insurance Code and been clear and honest regarding the substantially burdensome requirement of a judgment in order to receive any insurance benefits purchased from STATE FARM.

26. §541.151 provides the Plaintiff with a private right of action for these violations. Plaintiff sues to recover the damages, penalties and attorney's fees provided under $541.152 to include:

    1) the amount of actual damages, plus court costs and reasonable and necessary attorney's fees; and

    2) an order enjoining the act or failure to act complained of; and/or

    3) any other relief the court determines is proper.

27. The Plaintiffs actual damages in this case suffered as a consequence of the deceptive marketing of the insurance policy described above, include the amounts she paid for UM "benefits".

28. Plaintiff further alleges that Defendant has acted knowingly and intentionally with respect to the acts complained hereinabove and that the trier of fact award an amount not to exceed three times the amounts of actual damages.

## X.  FRAUD

29. STATE FARM made a factual and material representation regarding the benefits the Plaintiff was purchasing from STATE FARM including, but not limited to, the amount of the benefits she could receive if she were struck and injured by an uninsured driver.  STATE FARM made the representations with knowledge of its falsity.  STATE FARM intended for the Plaintiff to act on the representation or to induce the Plaintiff's reliance on the representation.  The Plaintiff reasonably and justifiably relied on the representation. The plaintiff suffered damages or injury as a result.

30. STATE FARM committed a fraud by non-disclosure in the selling of the auto insurance contract and the UM policy of benefits to the Plaintiff.  STATE FARM had a duty to disclose accurately and honestly the terms and conditions of the insuring agreement it sold to the Plaintiff.  This duty arises under Texas Statutory Law.  Texas Insurance Code Chapter 541 (.001, .003, .008, .051, .052, .061).   This duty is encompassed within the duty of "good-faith" and "fair-dealing" owed by STATE FARM to the Plaintiff.  *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 166–67 (Tex. 1987)

31. The facts STATE FARM had duty to disclose is the condition precedent to UM
benefits – the requirement to obtain a judgment at the insured's sole cost and
expense – as alleged by STATE FARM in this case.  STATE FARM had a duty to
disclose to the Plaintiff that the UM benefits sold to her with a limit of
$100,000.00 would never realistically be available to her because of the legal fees,
expenses and other costs of litigation she would be required to pay out of her
own pocket to actually get *any* of the UM benefits she was purchasing.

32. STATE FARM (1) deliberately failed to disclose these material facts; (2) STATE
FARM had a duty to disclose such facts to the Plaintiff; (3) the Plaintiff was
ignorant of the facts and did not have an equal opportunity to discover them as
these facts were only known to STATE FARM and revealed *only after* the Plaintiff
sued STATE FARM for UM benefits; (4) the Defendant intended the Plaintiff to
act (purchase the UM benefits) based on the nondisclosure; and (5) the Plaintiff
relied on the non-disclosure, which resulted in injury – the purchase of UM
benefits from STATE FARM.

33. This transaction was at least an "arm's-length" transaction.  The Texas Supreme
Court recognizes a duty to disclose based on a partial or voluntary disclosure, it
is limited to situations involving an arm's-length transaction. *See Admiral Ins. Co.*
*v. Arrowood Indem. Co.,* 471 B.R. 687, 711 (N.D. Tex. 2012) (refusing, under
*Bradford,* to find a duty to disclose in the absence of evidence of any transaction
or negotiation between the parties).

34. STATE FARM had a duty to disclose additionally because STATE FARM assumed a duty to disclose given its partial disclosure created a false impression. Once it stated the benefits/coverage it would provide to the Plaintiff if she purchased UM benefits, it was required to disclose the condition precedent – getting a judgment at her own cost – to obtaining such benefits.  "A duty arises when a person's partial disclosure conveys a false impression. *Natour v. Bank of Am.* (E.D. Tex. 2022) *citing See, e.g., Nelson v. Najm*, 127 S.W.3d 170, 175 (Tex. App.-Houston [1st Dist.] 2003, pet. denied).

## XI. EXEMPLARY DAMAGES

35. Plaintiff sues for exemplary damages.  Exemplary, or punitive, damages are not compensatory and are designed to punish the defendant for outrageous or morally culpable conduct and to deter the defendant and others from engaging in the same behavior in the future. *See Owens-Corning Fiberglas Corp. v. Malone* , 972 S.W.2d 35, 39–40 (Tex. 1998). *Bombardier Aerospace Corp. v. Spep Aircraft Holdings, LLC*, 572 S.W.3d 213 (Tex. 2019).

36. If applicable, the Plaintiff will show by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud or malice.  Tex. Civ. Pract. & Rem. C. §41.003.  Further, the exemplary damages cap under Tex. Civ. Pract. & Rem. C. §41.008 does not apply as the conduct complained of constitutes a felony under §32.46 Texas Penal Code (fraudulent securing of document execution).

37. Sec. 32.46 of the Texas Penal Code provides that (a)  A person commits an offense if the person, with the intent to defraud or harm any person: (1)  causes another person, without that person's effective consent, to sign or execute any document affecting property or service or the pecuniary interest of any person.  §32.46(d)(3) provides that consent is not effective if induced by deception.  STATE FARM secured the contract for UM insurance coverage without the "effective consent" of the Plaintiff.

38. The Plaintiff would request that the trier of fact consider the following in its award of exemplary damages:  (1)  the nature of the wrong; (2)  the character of the conduct involved; (3)  the degree of culpability of the wrongdoer; (4)  the situation and sensibilities of the parties concerned; (5)  the extent to which such conduct offends a public sense of justice and propriety;  and (6)  the net worth of the defendant.

## XII.  PROMPT PAYMENT OF ACCEPTED CLAIM

39. On May 17, 2022, STATE FARM agreed to pay $23,415.00 to the Plaintiff.

40. On May 24, 2022, STATE FARM clarified its acceptance or part of the Plaintiff's claim in the amount of $23,415.00 stating "Our offer is unconditional and no release is requested."

41. Texas Insurance Code §542.057 "Payment of Claim" required STATE FARM to pay the amount of the claim it "accepted" not later than the fifth (5th) business day after the date the notice was made.  STATE FARM did not condition

payment on any performance or act of the Plaintiff.  The date STATE FARM

accepted "unconditionally" a portion of the Plaintiff's claim was May 17, 2022.

Therefore, STATE FARM had until May 24, 2022 to pay.  STATE FARM did not

pay any amounts to the Plaintiff and has not as of the date of the filing of this

Complaint/Amended Complaint.

42. Because of its violation of Texas Insurance Code §542.057, STATE FARM is

required to pay the following to the Plaintiff as set forth under Texas Insurance

Code §542.060:  the amount of that portion of the claim that was accepted

($23,415.00), interest on this amount at 18% per year as damages (from May 25,

2022 until paid), together with reasonable and necessary attorney's fees in

addition to prejudgment interest on the amount of the claim.  §542.060 (b)

requires the attorney's fees awarded be taxed as costs of court.

### XIII.  BIFURCATED CLAIMS
### VIOLATIONS OF TEXAS INSURANCE CODE 541/542
### – CLAIMS HANDLING

43. The following are claims regarding the handling of the Plaintiff's claim for UM

benefits.

44. Unlike like all prior claim, these claims will require a prior finding of entitlement

to benefits.

45. However, it should be noted that STATE FARM did not "reject" the Plaintiff's

claim for UM benefits.  Rather, STATE FARM acknowledged her entitlement to

UM benefits but refused to pay the entirety of the benefits owed/claimed.

46. STATE FARM has violated Sec. 541.060 (a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear. STATE FARM is aware of the liability of "John Doe", the lack of culpability of the Plaintiff, the extent of Plaintiff's injuries and damages. STATE FARM is aware of the insurance benefits it sold to the Plaintiff and has offered to pay *substantially* less than what the Plaintiff is entitled to recover from her insurance benefits purchased.

47. Despite this knowledge STATE FARM has violated 541.060(A)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of (A) a claim with respect to which the insurer's liability has become reasonably clear;

48. STATE FARM has violated §541.060 (a) (3) by failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim.

49. STATE FARM has violated §541.060 (a) (7) by refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

50. STATE FARM has violated Texas Insurance Code Sec. 542.003 by failing to failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies; not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; and/or compelling a policyholder to institute a suit to

recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder.

51. STATE FARM violated §542.056 by failing to accept or reject the claim not later than the 15th business day after the date the insurer received all items statements, and forms it required to secure final proof of loss.

52. The Plaintiff has relied upon these false, misleading acts and practices to her detriment.

53. §541.151 provides the Plaintiff with a private right of action for these violations. Plaintiffs sue to recover the damages, penalties and attorney's fees provided for under §541.152 to include: (1) the amount of actual damages, plus court costs and reasonable and necessary attorney's fees and (2) an order enjoining the act or failure to act complained of; or (3) any other relief the court determines is proper.

54. Plaintiffs further allege that the Defendant ALLSTATE has acted knowingly with respect to the acts complained or hereinabove and that the trier of fact award an amount not to exceed three times the amount of actual damages.

### XIV.   CLAIM FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST

55. Plaintiff would further show that she is entitled to recover interest for all elements of damages recovered for which the law provides, including pre-judgment interest beginning on either (1) the 180th day after Defendants receives written notice of the claim or (2) the day suit is filed, whichever is earlier, and ending on the day preceding the date judgment is rendered, and at the pre-judgment interest rate

governed by VTCA Finance Code § 304.102, *et seq.* Plaintiff is also entitled to recover post-judgment interest at the maximum lawful rate.

## XV.    JURY DEMAND

56. Plaintiff demands a trial by jury and have tendered the appropriate jury fee.

## XVI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that upon trial of this cause, Plaintiff have judgment of, from, and against the Defendant for actual damages, attorney's fees, additional/treble damages, pre-judgment interest (from the date of injury through the date of judgment) at the maximum rate allowed by law, the amount of the claim accepted but not paid by the Defendant, statutory/18% pre-judgment interest, exemplary damages, post-judgment interest at the maximum legal rate, costs of court, and for such other and further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

BY:<u>//s// Jason J Thompson</u>
Jason J. Thompson
SBN 00791791
THE THOMPSON LAW FIRM
10999 IH-10 West, Suite 315
San Antonio, Texas 78230
Telephone: (210) 900-0400
Facsimile: (855) 410-4077
E-mail: <u>Jason@JJThompsonLaw.com</u>

**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I do hereby certify that the foregoing instrument was served in the following counsel on the 11th day of July, 2022, pursuant to Rule 5 of the Federal Rules of Civil Procedure, via email and eservice:

Brenda Montoya
ORTIZ & BATIS, P.C.
10100 Reunions Place, Suite 600
San Antonio, Texas 78216
brenda@ob-lawpc.com
rrosupport@ob-lawpc.com


*/s/  Jason J Thompson*
   Jason J Thompson